UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| JAMES R. DAVIS, II, | ) | |
|---|---|---|
| Plaintiff(s), | ) | |
| vs. | ) | Case No. 4:06CV00065 RWS |
| CONNIE BARTON, et al., | ) | |
| Defendant(s). | ) | |

## **MEMORANDUM AND ORDER**

This matter is before me on Defendants Luebbers, Steele, Smith, Hudson, Epps, Bowersox, and Moore's Motion for Summary Judgment [#50].

Plaintiff James R. Davis, II brought this suit under 42 U.S.C. § 1983 alleging that the defendants violated his Eighth Amendment constitutional right against cruel and unusual punishment. Davis alleges that the defendants were deliberately indifferent to his serious medical needs because he received inadequate treatment for a range of medical problems.

Defendants Luebbers, Steele, Smith, Hudson, Epps, Bowersox, and Moore move for summary judgment, arguing that: (1) Davis did not exhaust his administrative remedies prior to filing suit; (2) they cannot be held liable for Davis' medical treatment under a theory of *respondent superior* because they were not directly responsible for his medical treatment; and (3) they are entitled to qualified immunity as government officials because they were performing official discretionary functions.

Because I find that the defendants have not established that Davis failed to exhaust his administrative remedies, I will deny summary judgment on the basis of Defendants' argument of exhaustion. I will grant summary judgment in favor of the defendants on other grounds.

As to all of the defendants, I find that the defendants are not liable under the theory of *respondent superior* and that the defendants are entitled to qualified immunity as government officials performing official discretionary functions.

I will grant Defendants' Motion for Summary Judgment [#50].

## **Background**

The undisputed facts of this case are as follows:

James Davis entered the Missouri Department of Corrections ("MDOC") at the Fulton Reception and Diagnostic Center ("FRDC") on July 8, 2004. Before his incarceration, Davis had sustained a left knee injury requiring him to use a brace and a cane. Davis also had a pre-existing left shoulder injury which had required surgery. Davis also had collapsed arches on his feet for which he used shoe inserts. Davis had recently fractured the ulna on his right arm and the fifth metacarpal on his right hand which required an immobilizing brace.

Defendant Epps was the superintendent at FRDC when Davis arrived at the institution. Upon his arrival at FRDC, Davis' wrist and knee braces, cane, and shoe inserts were confiscated from him. His wrist brace was replaced with an ACE bandage.

Davis subsequently experienced severe back pain and numbness that he alleges was due to not being able to use his cane. Davis declares that the back ailment resulted in three medical emergencies when, according to Davis, his legs "quit working."

In each instance, Davis was taken to the medical unit on a stretcher, but was returned to his housing block without being given a medical examination. After the third emergency, Davis was given a new cane. Davis filed an Informal Resolution Request while at FRDC which he states was "barely addressed."

Davis was then transferred to South Central Correctional Center ("SCCC"). Defendant Bowersox was superintendent at SCCC. At SCCC, Davis' cane was replaced with a walker. Davis asserts that Bowersox was made aware of his medical condition through "the certified grievance procedure." Davis states that his grievance "was never addressed."

On or about November 9, 2004, Davis was transferred to the Northeast Correctional Center ("NCC"). Defendant Moore was superintendent at NCC. While at NCC, Davis suffered a dislocated left shoulder. He was given a sling for his arm. Davis was provided with a wheelchair because he could no longer use a walker. Davis was later involved in a wheelchair accident allegedly resulting in a dislocated knee cap. Davis claims his knee injury was treated only with ice. While at NCC, Davis began to experience gastro-intestinal bleeding, and a test confirmed blood in his stool. Davis asserts that Moore was made aware of his medical condition through five Informal Resolution Requests Davis claims to have filed while at NCC, which he alleges "were never addressed."

On April 19, 2005, Davis was transferred to Farmington Correctional Center ("FCC"). Defendant Luebbers was superintendent at FCC. Defendants Steele and Smith were Assistant Superintendents at FCC, and Defendant Hudson was Assistant Director of Health Services at FCC. Davis was treated primarily by Dr. Susan Cox at FCC.

Dr. Cox had Davis undergo an MRI for his back pain in August 2005. The MRI revealed two bulging disks. The regional office determined that the bulging disks were not serious enough to require an examination by a specialist. In December 2005, Davis' MRI was reviewed by Dr. Spears, a private neurologist. Based on this review, Dr. Spears concluded that the bulging disks were age related and that Davis' MRI was normal for a thirty-six year old man.

Dr. Cox, the FCC physical therapist and an emergency room doctor each recommended that Davis needed to see an orthopedist for his left shoulder. Dr. Cox initially submitted five requests for an orthopedist visit which were denied by the prison health care provider, Correctional Medical Service. In August 2005, Davis had an MRI conducted on his left shoulder. After the MRI, Davis was examined by an orthopedist. Davis was then referred to a shoulder specialist who examined Davis in December 2005. The shoulder specialist concluded that the sling was inappropriate, but that surgical intervention was not necessary.

Davis was examined by Dr. Cox on four occasions regarding pain in his right hand and shoulder. Between August 2004 and September 2005, Davis underwent five sets of x-rays of his right hand and shoulder while at FRDC, NCC, and FCC. The x-rays had revealed "normal radiographic studies[s]." However, the doctor who reviewed Davis' first x-ray at FRDC noted that Davis' fourth metacarpal had healed too close to the fifth metacarpal. The doctor did not feel any remedial steps were appropriate because the fracture had healed. Davis blames the incorrectly healed metacarpal on the ACE bandage he was given at FRDC.

A biopsy was performed on two of several lumps Davis had discovered in his back while at NCC. The biopsy indicated the massed were benign. Davis also received a follow up test for his gastrointestinal bleeding. Davis had not received the results of these tests at the time he filed this lawsuit.

On August 4, 2005, while at FCC, Davis filed an Informal Resolution Request regarding his medical treatment. The Informal Resolution Request was denied. On November 29, 2005, Davis filed an Offender Grievance regarding his medical treatment, which was also denied. Davis indicated that he would appeal the denial. However, the FCC custodian of records avers that no appeal was filed.

**Legal Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998) (citing Fed. R. Civ. P. 56(c)). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the nonmoving party has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

**Analysis**

Exhaustion of Remedies

Under the Prison Litigation Reform Act ("PLRA"), a prisoner filing a federal suit under 42 U.S.C. § 1983 regarding prison conditions must first exhaust all administrative remedies "as are available." 42 U.S.C. § 1997e(a). The exhaustion requirement extends to all prisoner suits regarding both "general circumstances" and "particular episodes." Porter v. Nussle, 534 U.S. 516, 532 (2002). Exhaustion is an affirmative defense; therefore it is the burden of the defendant

5

to prove that remedies have not been exhausted. Foulk v. Charrier, 262 F.3d 687, 697 (8th Cir. 2001). To exhaust all administrative remedies under §1997e(a), a Missouri offender must file an Informal Resolution Request, followed by an Inmate Grievance, and finally must file an Inmate Grievance Appeal. Smith v. Stubblefield, 30 F.Supp.2d 1168, 1174 (E.D.Mo., 1998).

Defendants argue that Davis did not exhaust his administrative remedies because he failed to file an appeal of his November 29, 2005 FCC Inmate Grievance. Davis argues that he attempted to exhaust, but that "the complaint was never processed." While inartfully worded, Davis' contention seems to be that he filed an appeal of the grievance, but that it was not properly submitted or processed by the prison staff.

Viewing the evidence in the light most favorable to Davis, the defendants have not established that Davis failed to exhaust his administrative remedies with regard to any of his alleged grievances. The defendants produced both the Affidavit of Custodian of Records at FCC which states that Davis failed to file an appeal of his FCC grievance and Davis' FCC offender grievance file which contains no record of an appeal. However, Davis' position that the prison failed to "process" the "grievance" is consistent with the absence of related records in the grievance file. Viewing the evidence in the light most favorable to Davis, I find that a genuine issue of material fact exists regarding whether or not Davis exhausted his administrative remedies with regard to his FCC grievance.

Additionally, the defendants have not shown that Davis failed to exhaust his administrative remedies with regard to his claims against the NCC, SCCC, and FRDC defendants. In their Motion for Summary Judgment, Defendants addressed only the November 29, 2005 FCC grievance. Defendants failed to address the seven Informal Resolution Requests Davis claims to have filed at NCC, SCCC, and FRDC.

6

I will deny summary judgment on the basis of exhaustion.

Respondeat Superior

"[R]espondeat superior is not a basis for liability under 42 U.S.C. § 1983." Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997). "[A] general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." Id. The Eighth Circuit has held specifically that "a bare allegation that someone in supervisory authority has been deliberately indifferent, without any specification of that person's contact in fact with the plaintiff, nor even an explicit charge of inadequate training or supervision of subordinates" is not sufficient to establish liability under § 1983. Estate of Rosenberg by Rosenberg v. Crandell, 56 F.3d 35, 38 (8th Cir. 1995).

The defendants contend that they cannot be found liable under a theory of *respondeat superior* because they were not directly involved in his medical care. Davis alleges that all of the defendants were made aware of his medical condition through letters, telephone calls, grievance proceedings and other sources, and that they acted with deliberate indifference toward his serious medical needs. Even if Davis could show that his medical treatment violated his Eighth Amendment rights, he has not shown any evidence that the defendants were personally involved in his medical treatment, nor has he alleged that they inadequately supervised or trained their subordinates.

Because Davis has failed to show facts sufficient to prove that the defendants were personally involved in his medical care, and he has failed to allege that the defendants inadequately trained or supervised their subordinates, I will grant summary judgment in favor of the defendants on the basis of respondeat superior.

Qualified Immunity

7

Government officials performing discretionary functions are generally immune from suit under the doctrine of qualified immunity. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "[A] government official is immune from suit unless the conduct complained of violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Buckley v. Rogerson, 133 F.3d 1125, 1128 (8th Cir. 1998) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

As Defendants have argued, even were Davis to prove his factual allegations, he would have merely shown a disagreement with prison staff as to his appropriate course of treatment. As previously discussed, a prisoner does not have the constitutional right to receive his own "requested course of treatment." Long, 86 F.3d at 765. Therefore, the conduct alleged by Davis does not amount to a constitutional violation.

Because the conduct complained of by Davis does not violate "clearly established statutory or constitutional rights," Defendants are entitled to qualified immunity. Therefore, I will grant summary judgment in favor of the defendants on the basis of qualified immunity.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Luebbers, Steele, Smith, Hudson, Epps, Bowersox, and Moore's Motion for Summary Judgment [#50] is **GRANTED**.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 21st day of September, 2007.